UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

GENIENE M. GUGLIELMO,

                                             Plaintiff,

-against-

NED KOPALD, individually and in his official
capacity, as a member of the Board of Education,
DAVID DELEO, individually and in his official
capacity as a member of the Board of Education,
ROXANNE DONNERY, individually and in her
official capacity as a member of the Board of
Education, KEVIN D'ONOFRIO, individually
and in his official capacity as a member of the
Board of Education, JAMES DUNLAP, individually
and in his official capacity as a member of the
Board of Education, ELEANOR LAVELLE,
Individually and in her official capacity as a
member of the Board of Education, PATRICIA
HANNIGAN, individually and in her official
capacity as a member of the Board of Education,
RACHELLE HARMER, individually and in her
official capacity as the Director of Business
Operations of the District, and the
HIGHLAND FALLS/FORT MONTGOMERY
CENTRAL SCHOOL DISTRICT,

                                             Defendants.

----------------------------------------------------------------X



**COMPLAINT**

**Jury Trial Demanded**

# 05 CIV. 7887

# BRIEANT

Plaintiff, GENIENE M. GUGLIELMO, by her attorneys Kuntz, Spagnuolo,

Scapoli & Schiro, P.C., for her complaint respectfully alleges as follows:

## NATURE OF ACTION

1. This is an action for compensatory and punitive damages proximately

resulting from Defendants' discriminatory and retaliatory conduct, engaged in under

color of New York State Law and pursuant to a jointly agreed upon plan, which violated

Plaintiff's rights as guaranteed her by the First and Fourteenth Amendments to the United

States Constitution, 42 U.S.C. §§ 1981, 1983, and unlawfully discriminated against Plaintiff in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et. seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., and the Rehabilitation Act of 1973, 20 U.S.C. § 794 et. seq.

## JURISDICTION AND VENUE

2.      The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 on the ground that this action arises under the First and Fourteenth Amendments to the U.S. constitution and under 42 U.S.C. §§ 1981, 1983 and 1985.  Plaintiff invokes this Court's jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et. seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., and the Rehabilitation Act of 1973, 20 U.S.C. § 794 et. seq.  Plaintiff invokes this Court's pendent jurisdiction with respect to her common law claims of the State of New York for breach of contract.

3.      The unlawful employment practices and constitutional violations alleged below were and are being committed within the Southern District of the United States District Court of the State of New York, venue is properly placed therein pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4.      Plaintiff, DR. GENIENE M. GUGLIELMO, is a sixty-two year old disabled female citizen of the United States, domiciliary of the County of Putnam, in the State of New York and resident of the Town of Carmel.  At times relevant to this complaint, she was qualified and employed as the Superintendent of Schools by the

2

defendant school district. At all times relevant, Plaintiff was able to perform all of the duties required of her position as Superintendent of Schools.

5.      Defendant, NED KOPALD (hereinafter "Kopald"), who is sued in his personal and individual capacities, and in his official capacity as a member of the Board of Education of the defendant school district, at all times relevant to this complaint was the President of the Board of Education of the defendant school district. As such, he, along with the other members of the Board of Education, have final discretionary decision making authority concerning disciplinary and employment action taken with respect to the plaintiff.

6.      Defendant, ELEANOR LAVELLE (hereinafter "Lavelle"), who is sued in her personal and individual capacities, and in her official capacity as a member of the Board of Education of the defendant school district, at times relevant to this complaint was the Vice-President of the Board of Education of the defendant school district. As such, she along with the other members of the Board of Education, have final discretionary decision making authority concerning disciplinary and employment action taken with respect to the plaintiff.

7.      Defendant, DAVID DELEO (hereinafter "DeLeo"), who is sued in his personal and individual capacities, and in his official capacity as a member of the Board of Education of the defendant school district, at all times relevant to this complaint was a Trustee of the Board of Education of the defendant school district. As such, he along with the other members of the Board of Education, have final discretionary decision making authority concerning disciplinary and employment action taken with respect to the plaintiff.

3

8. Defendant, ROXANNE DONNERY (hereinafter "Donnery"), who is sued in her personal and individual capacities, and in her official capacity as a member of the Board of Education of the defendant school district, at all times relevant to this complaint was a Trustee of the Board of Education of the defendant school district. As such, she along with the other members of the Board of Education, have final discretionary decision making authority concerning disciplinary and employment action taken with respect to the plaintiff.

9. Defendant, KEVIN D'ONOFRIO (hereinafter "D'Onofrio") who is sued in his personal and individual capacities, and in his official capacity as a member of the Board of Education of the defendant school district, at all times relevant to this complaint was the Trustee of the Board of Education of the defendant school district. As such, he along with the other members of the Board of Education, have final discretionary decision making authority concerning disciplinary and employment action taken with respect to the plaintiff.

10. Defendant, JAMES DUNLAP (hereinafter "Dunlap"), who is sued in his personal and individual capacities, and in his official capacity as a member of the Board of Education of the defendant school district, at all times relevant to this complaint was a Trustee of the Board of Education of the defendant school district. As such, he, along with the other members of the Board of Education, have final discretionary decision making authority concerning disciplinary and employment action taken with respect to the plaintiff.

11. Defendant, PATRICIA HANNIGAN (hereinafter "Hannigan"), who is sued in her personal and individual capacities, and in her official capacity as a member of the Board of Education of the defendant school district, at times relevant to this

4

complaint was the Vice-President of the Board of Education of the defendant school district. As such, she along with the other members of the Board of Education, have final discretionary decision making authority concerning disciplinary and employment action taken with respect to the plaintiff.

12. Defendant RACHELLE HARMER (hereinafter "Harmer"), who is sued in her personal and individual capacities, and in her official capacity as an aider and abettor to the Board of Education of the defendant school district, at all times relevant to this complaint was the School Business Official of the defendant school district.

13. Defendant, HIGHLAND FALLS – FORT MONTGOMERY CENTRAL SCHOOL DISTRICT (hereinafter the "District"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State of New York.

## ADMINISTRATIVE PROCEDURES

14. Plaintiff filed a charge of employment discrimination against the defendants with the district office of the Equal Employment Opportunity Commission ("EEOC") on January 7, 2005. The Plaintiff filed a supplementary charge of employment discrimination against the defendants with the EEOC on March 21, 2005. The Plaintiff received a "Notice of Right to Sue" concerning both charges by letter from the district office of the EEOC dated June 7, 2005, and the Department of Justice entitling her to institute a civil action with respect to all charges of discrimination within 90 days of the date of the receipt of said notice. The Plaintiff received the Notice of Right to Sue on June 11, 2005.

5

15.     Plaintiff served notice upon Defendants of her state law claim for breach of contract pursuant to § 3813 of the Education Law of the State of New York on March 23, 2005.

## STATEMENT OF THE CASE

16.     Plaintiff is a sixty two year old female who has been the District's Superintendent of Schools since January 2000.

17.     Plaintiff was diagnosed with breast cancer in July 2001. She had surgery on her left breast in July 2001 at which time 16 lymph nodes were permanently removed. Over the course of the 2001/2002 school year, Plaintiff's cancer was treated with chemotherapy and radiation. Plaintiff lost all her hair. Due to the removal of Plaintiff's lymph nodes she has suffered with chronic lymphodema resulting in severe swelling of her left arm and periodic infections, including herpes. Plaintiff has a record of a physical impairment.

18.     Defendants attitude toward Plaintiff as a result of her physical impairment and cancer was that she was perceived to be physically incapacitated and unable to work and as a result of Defendants' perception, Plaintiff was subjected to a hostile work environment.

19.     Defendants attitude toward Plaintiff as a result of her physical impairment and cancer was that she was perceived to be too impaired or mentally incapacitated to perform the functions of her position and as a result of Defendants' perception, Plaintiff was subjected to a hostile work environment.

20.     Plaintiff's disability substantially limited her major life activity of work as a result of the attitudes of Defendants toward Plaintiff's impairment, namely, she was

6

regarded by Defendants as physically and mentally incapacitated and purportedly unable to perform the functions of her position.

21.     Plaintiff is a qualified individual with a disability. At all times relevant Plaintiff was qualified for the position of Superintendent of Schools. She holds New York State Certification in School Administration. She has a doctorate degree in Administration, Policy and Urban Education from Fordham University. She has a Masters of Science in Administration from Western Connecticut University and a Bachelor of Science in Business Administration from Western Connecticut University. She has had a twenty-five year career in education including positions as a teacher, assistant principal and principal at the secondary level. Plaintiff at all times has been and is qualified for the position of Superintendent of Schools.

22.     While Superintendent of Schools for the Defendant District, Plaintiff earned the New York State Council of Superintendents' Leadership Certificate.

23.     In accordance with a resolution adopted at a meeting of the Defendant Board of Education held on December 9, 1999, Plaintiff was appointed to the position of Superintendent of Schools for a three year period commencing on January 1, 2000 and terminating on December 31, 2002, unless further extended or sooner terminated.

24.     Plaintiff's employment is governed by the laws of the State of New York and a contract of employment, dated April 6, 2000, between the Plaintiff and the Defendants and various other written and oral terms and conditions of employment. Plaintiff's contract is attached hereto as Exhibit "A."

25.     The contract provided two methods by which Plaintiff's employment contract could be extended: (1) by the Defendant Board of Education affirmatively extending the term of her employment for an additional one year period after performing

an annual evaluation review or (2) as an automatic occurrence upon the failure of the Defendant Board to perform its annual evaluation of Plaintiff's performance or refusal to so move, second, consider and vote upon such an extension before July 1, 2000 during the year 2000 and no later than March 1st of each succeeding year of the contract.

26.     The contract required that Plaintiff provide notice to the Defendant Board of Education at least 30 days in advance of its responsibility to meet and consider an extension of Plaintiff's employment by no later than March 1st of each year of the contract.

27.     Plaintiff was further required to place an item upon the Defendant Board's agenda for a meeting during the month of August in each year for consideration of extending the term of Plaintiff's employment for an additional one year period.

28.     The procedure for conducting Plaintiff's evaluation, developed by agreement between Plaintiff and Defendant Kopald, was for Plaintiff to submit a self-evaluation to the Board and the Board to provide Plaintiff with an evaluation of her performance.  The Board would then meet to consider the extension of the Superintendent's contract for a period of one year.

29.     In May 2000, the Defendant Board requested an amendment to the timing of the evaluation process.  The Board requested, and plaintiff agreed, that the evaluation process be commenced by July 30 (not March 1) due to the budget preparation responsibility of the Board during March and April.

30.     In July 2000, the Board evaluated Plaintiff's performance as above satisfaction and increased her salary by 4% for the next year.  At the September 27, 2000 Board meeting, the Board extended Plaintiff's contract one additional year to December 31, 2003.

8

31.    For the 2000/01 school year the evaluation procedure was to be repeated.
It was agreed that the evaluation would be conducted by July 30, 2001 and the Board
appointed an evaluation committee to implement the agreed upon procedure for
performing Plaintiff's evaluation.

32.    The evaluation committee was comprised of Defendant Kopald,
Defendant Lavelle and Defendant De Leo.

33.    Pursuant to the agreed upon evaluation procedures, Plaintiff submitted her
evaluation to the Defendant Board on July 7, 2001.

34.    On July 12, 2001, Plaintiff underwent surgery for removal of a malignant
breast tumor.  She was diagnosed with breast cancer and in addition to removal of the
tumor, sixteen lymph nodes were removed.

35.    Plaintiff disclosed her diagnosis and treatment to the Board of Education
at a meeting held in or about July, 2001.  Plaintiff notified the Defendant Board that post-
surgical treatment of chemotherapy would commence in August, 2001.

36.    Plaintiff lost all her hair by September 2001 and had to wear a wig.

37.    Despite Plaintiff's repeated requests to complete the evaluation process,
Defendant Board delayed consideration of Plaintiff's salary increase and extension of her
contract.

38.    Defendant Board's delay was due to its belief that Plaintiff's cancer was a
physical impairment rendering Plaintiff incapable of performing the essential functions of
her position.  Plaintiff remained fully capable of performing the duties of her position and
did perform the duties of her position.

39.    Despite Plaintiff's repeated requests to vote on her salary increase and
extension of her contract, the Board delayed consideration in the belief that her cancer

9

would result in her resignation, an expectation resulting from Defendant Board's discrimination against Plaintiff because of her disability or its perception that Plaintiff was disabled.

40. On January 10, 2002, five months after it was supposed to confer upon Plaintiff's evaluation, the Defendant Board met and voted to increase Plaintiff's salary by 4.5% and to extend her contract to December 31, 2004.

41. In February, 2002, Plaintiff consulted with her surgeon about further treatment.

42. In March, 2002 Plaintiff underwent 30 consecutive days of radiation.

43. Starting in March, 2002 Defendant LaVelle began to appear weekly in the Plaintiff's office.

44. On those occasions, Ms. Lavelle perceived Plaintiff to be disabled and stated in sum and substance to the Plaintiff "Come on you should go home," or "You must be tired" and "you have to take care of yourself."

45. Defendant Rachelle Harmer, the Board's business manager, who acted as a confidante to members of the Board, made statements in the presence of others, in sum and substance that the "chemo has gone to her [Plaintiff's] brain."

46. Thereafter, Plaintiff continued to perform the duties of her position but was subjected to a hostile environment as a result of her disability and/or Defendant Boards perception that Plaintiff was disabled.

47. On or about January 17, 2002, pursuant to the notice provision of Plaintiff's contract, she notified the Board of its responsibility to meet and consider another extension of her contract, including a draft timeline for the evaluation process.

48.    On July 25, 2002, the Plaintiff presented her self-evaluation to the Board. The matter was also placed upon the Board Agenda for the July 25, 2002 Board meeting.

49.    The Plaintiff placed her self-evaluation and evaluation upon the Agenda for the August 21, 2002 Board meeting.

50.    The Defendant Board members failed to respond to Plaintiff's request for action on her evaluation.

51.    Plaintiff requested the Board take action on her evaluation in September, 2002. When it failed to take action, Plaintiff requested the Board take action on her evaluation in October, 2002. The Defendant Board failed to take any action on Plaintiff's annual evaluation. By operation of the contract, Plaintiff's contract was automatically extended another year to December 31, 2005.

52.    On January 17, 2003, Plaintiff once again notified the Defendant Board of its responsibility to meet and consider an extension of the Plaintiff's employment.

53.    On or about July 31, 2003, Plaintiff presented her self-evaluation to the Defendant Board for its consideration.

54.    Plaintiff placed her annual evaluation on the Board of Education Agenda for its meeting held on August 14, 2003.

55.    Defendant Board failed to take action and Plaintiff again placed her annual evaluation on the Board of Education Agenda for its meeting held on August 28, 2003. Defendant Board failed to take action. Plaintiff again placed her annual evaluation on the Board of Education Agenda for its meeting held on September 16, 2003. Defendant Board failed to take action. Plaintiff again placed her annual evaluation on the Board of Education Agenda for its meeting held on September 30, 2003.

11

56.     On or about September 18, 2003, Plaintiff found the District Clerk, Fran De Witt, taking personnel files out of the Personnel File Cabinet in the District Office. When Plaintiff asked for an explanation, Ms. DeWitt stated that Defendant Kopald had directed her to make and bring copies of the personnel files of certain teachers from the District Office to his private law office.

57.     Plaintiff directed the District Clerk to inform Defendant Kopald that legally the files could not be copied and removed from the District Office. Defendant Kopald responded by threatening Plaintiff, stating in words or substance, "I strongly suggest that what you are doing, you step back from doing it" referring to the Plaintiff's direction to the District Clerk's that she should not copy and remove the personnel files.

58.     Plaintiff again placed her request for action on her evaluation on the Board of Education Agenda for its meeting held on November 6, 2003. Defendant Kopald removed that item from the Agenda without informing Plaintiff.

59.     Defendant Board took no action on Plaintiff's annual evaluation.

60.     By operation of the contract, Plaintiff's contract was automatically extended another year to December 31, 2006.

61.     On or about January 2004, Plaintiff's condition of lymphodema flared which resulted in a severe herpes infection, swelling of her left arm and sores on her hand. In or about March 2004, Defendant Lavelle noticed Plaintiff's hand was swollen and stated, "Oh my God, what is wrong with your hand?" Plaintiff explained that she had an infection due to her lymphodema.

62.     On April 19, 2004, Defendant Board delivered to Plaintiff "the Superintendent's Evaluation 2003/2004" and invited Plaintiff to a special meeting to be held April 29, 2004.

63.     Due to Plaintiff's age, gender, perceived disability and exercise of her First Amendment Rights, Defendants' submitted an overwhelmingly negative evaluation of Plaintiff. One of the negative items on Plaintiff's evaluation was "the disruptive and poor relationship with the Garrison Board of Education and its Superintendent was significantly exacerbated by the Superintendent's hostile and accusatory communications with the Superintendent of Garrison."

64.     In addition to working in a hostile environment due to her disability and perceived disability, Plaintiff has been persecuted and punished by the Defendants for exercising her right to free speech under the First and Fourteenth Amendment of the United States Constitution.

65.     Defendant District has a statutory obligation to accept high school students from its neighboring school district, the Garrison Union Free School District ("Garrison"). Garrison does not provide a high school for its students. Highland Falls receives tuition based upon a formula determined by the New York State Education Department.

66.     Within the Garrison School District boundaries, there is a charitable institution dedicated to providing a home for children whose parents are deceased or can no longer care for them. Despite its name, St. Basil's Academy ("St. Basil's") has not provided education for its children since 1997. Instead, since 1997, St. Basil's has sent its children to Garrison for education. New York State Law provides that these children are to be educated locally, although Garrison may lawfully bill the parent's home school district. Since Garrison does not provide high school services to any student, St. Basil's high school students have been educated by the Defendant District.

67.     The District is statutorily prohibited from discriminating against these disadvantaged children from St. Basil's.

68.     In September 2003, the status of these children's education became a matter of public concern within the area of the District and Garrison. The story received front page coverage in the local newspaper, the Putnam County News.

69.     Garrison refused to pay for these disadvantaged students on grounds that were later deemed by the Commissioner of Education to be illegal. In support of its argument objecting to funding the St. Basil's education before the Commissioner of Education, Garrison submitted a letter from Defendant Kopald in which he stated that the District would not accept St. Basil's students unless St. Basil's tuition payments were brought up to date. Defendant Kopald's stance would have resulted in 13-15 disadvantaged students from diverse backgrounds being denied any high school education. The discriminatory impact of Defendant's Kopald's position was not only illegal but morally bankrupt.

70.     Plaintiff became a public advocate for these students and their right to be educated. In a Journal News article dated September 9, 2003, she was quoted that she would have welcomed these students into the District even if the Commissioner of Education had not ordered that they be accepted. Her statement also was published by the Orthodox Christian News Service, a nationwide news service by the Greek Orthodox Church. Upon reading her comments, Defendant Kopald became irate at her for stating that she would have welcomed these children and ordered her to make no further comment about allowing these students into the District.

71.     Plaintiff heeded this illegal directive but continued her support of St. Basil's and its students particularly when Garrison initiated a social service investigation

14

designed to withdraw its license to operate. When St. Basil's was ordered to close by a state agency, she publicly expressed her opposition to the closing to a reporter for the Putnam County News published in its January 14, 2004 edition. She was quoted as stating that "there have been many things I've seen in my years in education but I have never seen anything as heartless as this. I can't allow these kids who have come so far to be sent to foster care."

72.    During St. Basil's successful hearing to restore its license, Plaintiff was subpoenaed by St. Basil's to testify. Although she was willing to testify without a subpoena, Defendant Kopald had told her she could not speak on the matter without a subpoena. Her testimony that the students would be welcomed back into the District was a significant factor in an Office of Children and Family Services appellate judge's decision to grant St. Basil a foster care license. Defendant Kopald's letter that the children would not be welcome at the District was apparently a major concern in the original license denial since that would have resulted in the students not receiving a high school education.

73.    Shortly after Plaintiff provided testimony, she was suspended from her position as Superintendent and told that she was under investigation.

74.    At a special meeting, on April 29, 2004, due to Plaintiff's age, gender, perceived disability and exercise of her First Amendment rights with regard to St. Basil's, the Defendant Board voted not to extend Plaintiff's contract.

75.    On June 10, 2004, Plaintiff received a letter from Defendant Kopald intended to chill Plaintiff's First Amendment rights by directing her "to not take any further action with regard to St. Basils. Your previous statements and actions have caused us sufficient grief and expense on this subject."

76.     In or about May 2004, Plaintiff was handed the final of her evaluation and asked to provide the date that she considered her contract to expire.

77.     By letter dated May 27, 2004, Plaintiff's attorney informed the Board that the end date of Plaintiff's employment contract was December 31, 2006.

78.     Under circumstances giving rise to an inference of age, gender, disability discrimination, and the violation of Plaintiff's First Amendment rights the Defendant Board took the untenable position that Plaintiff's employment contract would expire on December 31, 2004.

79.     The employment contract provided that for the purposes of any retirement benefit, the Plaintiff would be deemed to have "retired" from her employment if she had completed at least three years of service as Superintendent of the District unless there was a finding of guilt on charges brought against the Superintendent during the term of the contract.

80.     Under Plaintiff's contract with the Defendant Board of Education her employment with the School District may only be terminated under the following circumstances: 1) her resignation; 2) her removal for cause during the term of the contract, after a hearing before an independent hearing officer, and 3) the expiration of the contract.

81.     On July 16, 2004, under circumstances giving rise to an inference of age, gender, disability discrimination, and the violation of Plaintiff's First Amendment rights, Defendant Board preferred 55 specious and false disciplinary charges alleging misconduct against Plaintiff seeking her dismissal as Superintendent of Schools.

82.     Among the charges is an accusation that she provided the name of the school attorney to the priest in charge of St. Basil's after he requested it. The priest,

16

Father Costas Sitaras, was interested in a school attorney to represent St. Basil's before the Commissioner of Education. Dr. Guglielmo provided the name of the District's school attorney because it was a matter of public record and because a victory for St. Basil's against Garrison would mean payment of over $100,000.00 to the District.

83.    Father Sitaras utilized the services of an attorney in the firm that represented (and continues to act as general counsel) to the Defendant District. As a result of the subsequent victory against Garrison, the District has been compensated by Garrison for the St. Basil's students' attendance.

84.    There is no logical or rational reason to charge Plaintiff with providing the name of the Defendant District's attorney to Father Sitaras other than to punish her for publicly expressing her support for St. Basil's and more particularly, its students. This public support frustrated the intention of Defendant Kopald to illegally prevent these students from attending the District schools.

85.    The Defendant Board suspended Plaintiff from her position as Superintendent of Schools.

86.    On August 10, 2004, the Plaintiff, through her attorneys, notified the Board of Education that she wanted a hearing before an independent hearing officer on each of the charges.

87.    On October 12, 2004, Dr. Joel Douglas was selected as the independent hearing officer.

88.    The Plaintiff's contract with the Defendant Board (¶ 5) provides that the Board of Education as a whole or any of its members shall notify the plaintiff in writing of "any and all criticisms, complaints, suggestions, communications or comments

regarding the administration of the District or the Superintendent's performance of her duties."

89.     On December 3, 2004, the Plaintiff served a demand upon the Defendant Board for the particulars of each charge and for copies of any and all documents notifying the plaintiff in writing of "any and all criticisms, complaints, suggestions, communications or comments regarding the administration of the District or the Superintendent's performance of her duties."

90.     The Defendant Board has never responded to the Plaintiff's demand for the particulars of the charges against her or for the documentation of "any and all criticisms, complaints, suggestions, communications or comments regarding the administration of the District or the Superintendent's performance of her duties."

91.     On December 13, 2004, the Defendant Board notified the Plaintiff that her employment would terminate, that her salary and all her benefits would cease and that after December 31, 2004, she would no longer be an employee of the School District.

92.     By letter dated December 21, 2004, Plaintiff notified Defendants that she intended to pursue her rights as the victim of illegal and discriminatory conduct.

93.     On January 4, 2005, the defendant Board of Education convened the hearing on the charges against the Plaintiff.

94.     As a courtesy to the hearing officer, Dr. Joel Douglas, the Plaintiff appeared at the hearing and through her attorneys informed Dr. Douglas that the charges, brought for the purpose of terminating the plaintiff's employment prior to the expiration of her contract, were moot in light of the Board's action notifying the plaintiff that her contract expired on December 31, 2004, terminating her employment on that date.

95.    At the January 4, 2005 hearing, the Defendant Board of Education admitted that it had terminated the Plaintiff's contract effective December 31, 2004, terminated her employment and cancelled all her benefits. The Defendant Board of Education asserted that it had the right to go forward with the proceeding, despite the fact that it had terminated plaintiff's employment and all her benefits, because the Plaintiff might sue the Defendant Board of Education for wrongful termination, might be reinstated, arguing to the hearing officer that it wanted a decision from him finding the Plaintiff guilty of misconduct to preclude that possibility.

96.    The Defendant Board of Education stated to the hearing officer that he had no power to determine whether the contract had expired or not and that his sole charge was to hear the charges against the plaintiff. The hearing officer adjourned the hearing, to allow him to further consider whether there was any issue for him to hear.

97.    Plaintiff, through her attorneys, submitted letter briefs to support her position that there was no factual or legal basis upon which the hearing could proceed. (Letters dated March 22, 2005 and May 25, 2005 are attached hereto as Exhibits "B")

98.    To date, there has been no response on the Plaintiff's motion to dismiss the hearing and the hearing has not gone forward.

99.    At a conference with the Defendant Board of Education on January 4, 2004, after the adjournment by the hearing officer, the Plaintiff informed the Defendant Board of Education that she intended to file a notice of claim in regard to her contract action and to file with the EEOC with regard to her wrongful discharge.

100.    Under circumstances giving rise to an inference of age, gender and disability discrimination and in violation of Plaintiff's First Amendment rights, Defendants have breached their contractual obligations to Plaintiff when, effective

19

January 1, 2005, they terminated Plaintiff's employment contract which had been extended to December 31, 2006; ceased paying Plaintiff's salary, her insurance premiums, life and disability insurance premiums, failed to reimburse Plaintiff for any sick or vacation days and requested Plaintiff to pay for health insurance premiums under COBRA, to maintain insurance for her and her ailing husband, coverage to which she was contractually entitled having completed three years of service to the District.

101. As of December 31, 2004, Defendants have not paid Plaintiff's salary or her benefits to which she was entitled under her employment contract constituting a total breach of the employment contract with Plaintiff.

102. On January 13, 2005, one month after Defendants had already unilaterally determined the Plaintiff's employment contract had expired, in retaliation for Plaintiff having asserted that she intended to pursue her rights to be free from illegal and discriminatory conduct, Defendant Board preferred supplemental disciplinary charges against Plaintiff.

103. Upon information and belief, Defendants have replaced Plaintiff in the position of Superintendent of Schools with a male, who is younger than Plaintiff.

104. Upon information and belief, Defendants compensate the replacement Superintendent of Schools at an amount in excess of 25% more than Plaintiff was compensated while she held the same position.

## INCORPORATION OF ALLEGATIONS

105. All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983

106.    The individual defendants, acting under color of New York State Law, subjected Plaintiff to the deprivations of the following rights, privileges and immunities secured by the Constitution and laws of the United States when they decided to prefer disciplinary charges against Plaintiff and terminated her contract:

(a) The individual Defendants have deprived plaintiff of her right of free speech under the First and Fourteenth Amendments to the U.S. Constitution by basing their decisions to discipline Plaintiff and terminate her contract to an impermissible extent on Plaintiff's exercise of her free speech right.

(b) The individual Defendants have deprived plaintiff of her right to be free from invidious discrimination as guaranteed to Plaintiff by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et. seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., and the Rehabilitation Act of 1973, 20 U.S.C. § 794 et. seq., by basing their decision to discipline Plaintiff and terminate her contract on Plaintiff's age, gender and disability or perceived disability due to Plaintiff.

(c) The individual Defendants have deprived plaintiff of her right to due process of law under the Fourteenth Amendment to the U.S. Constitution by unilaterally terminating her contract of employment, her employment benefits, her health benefits and her retirement benefits without due process of law.

107.     As a result of the foregoing deprivations, plaintiff has been discharged unlawfully from her employment, has suffered anxiety and other distress since being advised on July 16, 2004 that she would be subject to disciplinary charges, has suffered humiliation and embarrassment as a result of her contract being prematurely terminated and discharged from employment, has suffered and will continue to suffer lost wages and fringe benefits as an employee of Defendant School District, has suffered and continues to suffer loss and injury to her reputation and has suffered other compensatory damages to be proved at trial.

## SECOND CLAIM FOR RELIEF

### Civil Rights Act of 1964

108.     Defendants have discriminated against plaintiff because of her gender with respect to the terms and conditions of her employment by preferring disciplinary charges against Plaintiff, prematurely terminating her contract, terminating her employment benefits, terminating her health benefits, terminating her retirement benefits and replacing her with a male Superintendent of Schools at a considerable higher rate of compensation and have thereby intentionally engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e.

109.     Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 7, 2005 as required by 42 U.S. C. § 2000e-5. More than 180 days have elapsed since the filing of that charge, and neither the EEOC nor the Attorney General of the United States has filed a civil action with respect to the charge, and the EEOC has not entered into a conciliation agreement to which plaintiff is a party.

110.    Plaintiff is entitled to such affirmative action and other equitable relief (including reinstatement with back pay) as this Court deems appropriate under 42 U.S.C. § 2000e-5.

## THIRD CLAIM FOR RELIEF

### Age Discrimination in Employment Act

111.    Defendants have discriminated against plaintiff because of her age with respect to the terms and conditions of her employment by preferring disciplinary charges against Plaintiff, prematurely terminating her contract, terminating her employment benefits, terminating her health benefits and terminating her retirement benefits replacing her with a person younger than she at a rate of compensation considerably higher than she was receiving and intentionally engaged in unlawful employment practices prohibited by the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et. seq..

112.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 7, 2005 as required by 42 U.S. C. § 2000e-5. More than 180 days have elapsed since the filing of that charge, and neither the EEOC nor the Attorney General of the United States has filed a civil action with respect to the charge, and the EEOC has not entered into a conciliation agreement to which plaintiff is a party.

113.    Plaintiff is entitled to such affirmative action and other equitable relief (including reinstatement with back pay, front pay and punitive damages) as this Court deems appropriate under 29 U.S.C. § 621 et. seq.

## FOURTH CLAIM FOR RELIEF

## Americans with Disabilities Act

114. Defendants have discriminated against plaintiff because of her disability and/or perceived disability with respect to the terms and conditions of her employment by preferring disciplinary charges against Plaintiff, prematurely terminating her contract, terminating her health benefits, terminating her retirement benefits replacing her with a younger person, at a rate of compensation considerably higher than she was receiving, and have thereby intentionally engaged in unlawful employment practices prohibited by the Americans with Disabilities Act, 42 U.S.C. §2101 et. seq., and the Rehabilitation Act of 1973, 20 U.S.C. §794 et. seq.

115. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 7, 2005 as required by 42 U.S. C. §2000e-5. More than 180 days have elapsed since the filing of that charge, and neither the EEOC nor the Attorney General of the United States has filed a civil action with respect to the charge, and the EEOC has not entered into a conciliation agreement to which plaintiff is a party.

116. Plaintiff is entitled to such affirmative action and other equitable relief (including reinstatement with back pay) front pay, compensatory and punitive damages as this Court deems appropriate under 42 U.S.C. § 1981a, 42 U.S.C. § 12101 et. seq. and 20 U.S.C. § 794 et. seq.

## FIFTH CLAIM FOR RELIEF

### Breach of Contract

117.    Defendants entered into an employment contract with Plaintiff dated
April 6, 2000 for valuable consideration.

118.    Plaintiff performed all the duties and obligations of the contract.

119.    Defendants breached the employment contract by prematurely unilaterally
terminating her contract of employment, her employment benefits, her health benefits and
her retirement benefits as provided for in the employment contract.

120.    As a result of Defendants breach of contract, Plaintiff has suffered
humiliation and embarrassment as a result of her contract being prematurely terminated
and discharged from employment, has suffered and will continue to suffer lost wages and
fringe benefits as an employee of Defendant School District, has suffered and continues
to suffer loss and injury to her reputation and has suffered other compensatory damages
to be proved at trial.

## SIXTH CLAIM FOR RELIEF

### Retaliation

121.    Defendants' retaliated against Plaintiff for her assertion of her rights as
guaranteed to her by the First and Fourteenth Amendment to the Constitution, the Civil
Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with
Disabilities Act, and the Rehabilitation Act of 1974, by preferring post-termination
disciplinary charges against Plaintiff after she notified Defendants that she intended to
pursue all available means to protect her civil liberties.

## MISCELLANEOUS ALLEGATIONS

122.    The Defendants have at all times material to the foregoing claims acted willfully and with malice toward the plaintiff. The Defendants knew, or reasonably should have known, that their conduct was unlawful and specifically in violation of the laws of the State of New York and the United States of America.

WHEREFORE, judgment is respectfully demanded:

a.      Awarding as against all Defendants such compensatory, punitive and equitable damages as the jury may impose,

b.      Awarding as against the individually named Defendants such punitive damages as the jury may impose,

c.      Awarding as against all Defendants reasonable attorney's fees and costs, and,

d.      Granting such other and further relief as to the Court seems just and proper.

Dated:          Bedford Village, New York
                September 9, 2005

                        Yours, etc.

                        KUNTZ, SPAGNUOLO, SCAPOLI & SCHIRO, P.C.
                        *Attorneys for Plaintiff*
                        Route 22 Hunting Ridge Mall
                        Bedford Village, New York 10506
                        (914) 234-6363

                        Raymond G. Kuntz (5546)

To:             Clerk of the Court
                United States Courthouse
                300 Quarropas Street
                White Plains, New York 10601-4100

Exhibit A

## SUPERINTENDENT'S CONTRACT

The following is the employment contract for the Highland Falls–Fort Montgomery Superintendent of Schools.

AGREEMENT, made this ~~____~~ of ~~March~~ April 10, 2000, by and between THE BOARD OF EDUCATION OF THE HIGHLAND FALLS-FORT MONTGOMERY CENTRAL SCHOOL DISTRICT, Orange County, New York (hereinafter, the "Board") and DR. GENIENE M. GUGLIELMO, residing at 15 Schuylkill Court, Carmel, New York 10512 (hereinafter, the "Superintendent")

### WITNESSETH:

WHEREAS, the Board has offered to employ the Superintendent as the chief executive and administrative officer of the Highland Falls-Fort Montgomery Central School District (hereinafter, the "District"), upon the terms and conditions set forth herein; and

WHEREAS, the Superintendent has accepted the Board's offer of employment on the terms and conditions set forth herein; and

WHEREAS, it is the parties' belief that a written consent fully specifying the terms and conditions of the Superintendent's employment by the District will promote effective communication and true understanding between the parties; and

WHEREAS, the parties have mutually agreed upon the following terms and conditions relative to the Superintendent's employment by the District,

NOW, THEREFORE, in consideration of the agreements hereinafter set forth, and other good and valuable consideration, the parties agree as follows:

### 1. **Offer of Employment**

The Board, pursuant to Section 1711 of the New York Education Law and in accordance with a resolution duly adopted at a meeting held on December 9, 1999 hereby offers to employ Dr. Geniene M. Guglielmo as the Superintendent of Schools of the District upon the terms and conditions set forth in this Agreement.

### 2. **Acceptance by Superintendent**

The Superintendent hereby accepts said offer of employment and agrees to perform, to the best of her ability, the duties of such position.

### 3. **Term of Employment**

(a) The Superintendent's initial term of employment shall be for a three-(3) year period, commencing on January 1, 2000 and terminating on December 31, 2002, unless further extended or sooner terminated as hereinafter provided.

1

(b) No later than July 30, 2000 during the year 2000 and no later than April 30th on each of the succeeding years of this contract, or any extension hereof, the Board shall meet to consider extending the term of the Superintendent's employment for an additional one-year period. The Board shall devote at least a portion of one meeting during the month of June of 2000 and April thereafter in each year of the Superintendent's employment by the District, to an evaluation in executive session of her performance and working relationship with the Board. Upon the Board's failure to perform the annual evaluation of the Superintendent or refusal to so move, second, consider and vote upon such an extension within the time provided herein, the then unexpired term of this Agreement shall be automatically extended by an additional one (1) year period. The requirements of this paragraph 3 (b) may be waived by the Superintendent upon written notice to the Board.

(c) The Superintendent shall be required to provide notice to the Board of Education at least 30 days in advance of its responsibility to meet and consider an extension of the Superintendent's employment by no later than March 1st of each year of this contract. The Superintendent shall further be responsible for placing an item upon the Board's agenda for a meeting during the month of August in each year of this contract for consideration of extending the term of the Superintendent's employment for an additional one (1) year period. The automatic extension of Paragraph 3 (B), above, shall not be effective unless the notice and agenda requirements in this Paragraph 3 (C) have been met by the Superintendent.

(d) Any extension of the term of the Superintendent's employment shall be in the form of an amendment to this Agreement; and shall be upon the same terms and conditions as herein set forth unless otherwise agreed in writing by the parties.

### 4. Superintendent's Duties and Responsibilities

(a) The Superintendent shall be the chief administrative officer of the District and shall perform all the duties of and possess all of the authority now or hereafter imposed upon or granted to a superintendent of schools under the provisions of the Education Law or other statute of the State of New York, or by rule or regulation of the Board of Regents or Commissioner of Education.

(b) Without limiting the foregoing, the Superintendent shall have the specific authority, right and responsibility to:

    (i)    organize and reorganize the administrative and supervisory staff, including instructional and non-instructional personnel, in a manner which, in the Superintendent's judgment, best serves the District;

    (ii)    make recommendations to the Board of Education as a prerequisite to either the appointment or the termination of employment of both instructional and non-instructional personnel;

2

(iii) supervise and direct associate, assistant and other superintendents, directors, supervisors, principals, teachers and all other persons employed in either the business management or the instructional activities of the District; and

(iv) transfer certificated and/or classified employees or any other support staff from one school to another, or from one grade of a course of study to another grade in such course, as well as any support staff.

(v) Transfer monies within the budget up to $10,000 without Board of Education approval after written notification to the Board of Education.

(c) The Superintendent's duties are set forth in the Job Description annexed as Addendum "A". The Board may, from time to time, prescribe additional duties and responsibilities for the Superintendent; provided, however, that the Board shall not, without the Superintendent's written consent, adopt any policy, by-law or regulation which impairs or reduces the duties and authority specified above; and provided, further, that all additional duties and responsibilities prescribed by the Board are consistent with those normally associated with the position of superintendents of schools in the State of New York. This provision shall continue in full force and effect during any period of suspension.

## 5. Board Referral

The Board, individually and collectively, shall promptly and discretely refer to the Superintendent, in writing, for her study and recommendation, any and all criticisms, complaints, suggestions, communications or comments regarding the administration of the District or the Superintendent's performance of her duties.

## 6. Certification

The Superintendent shall possess a valid certificate to act as a Superintendent of Schools in the State of New York during the term of her employment with the District. It is expressly understood that failure to hold and maintain such certification shall be cause for the immediate termination of this Agreement and the employment of the Superintendent.

## 7. Compensation

(a) The Superintendent's base salary for the twelve-month period from January 1, 2000 to December 31, 2000 shall be at the rate of Ninety-Four Thousand and no/100 dollars ($94,000) per year, paid in equal installments in accordance with the rules of the Board governing salary payment of other District administrative employees.

(b) The Superintendent's compensation for each subsequent twelve-month period of employment shall be determined by the Board no later than September 1 in each year; provided, however, that in no event shall the Superintendent's base salary for any twelve-month period of employment be less than the amount of base salary received during the preceding twelve-month period.

3

(c) Any increase in the Superintendent's base salary shall be in the form of an amendment to this Agreement; and it shall not be considered that the Board and the Superintendent have entered into a new Agreement, unless expressly stated in writing signed by both parties hereto.

## 8. Annuity

The Board shall also deduct the annual sum as may be designated by the Superintendent from the Superintendent's base salary established as set forth above to pay the annual premium for the purchase of a tax deferred annuity for the Superintendent with a company designated by the Superintendent.

## 9. Performance Evaluation

The Board shall devote at least a portion of one meeting during the month of April (the month of June in the year 2000) in each year of the Superintendent's employment by the District to an evaluation in executive session of her performance and working relationship with the Board. The evaluation shall be based upon performance criteria mutually agreed upon by the parties, and shall be reduced to writing in a form mutually agreed upon by the parties. The Superintendent shall be provided with a copy of the written evaluation at least ten (10) days prior to the executive session of the Board scheduled to discuss such evaluation. The performance evaluation shall be kept confidential by the Board Members. (See paragraph 3 (b))

## 10. Other Benefits

In addition to the annual compensation specified in paragraph "7" of this Agreement, the Superintendent shall be entitled to receive benefits, including, but not limited to, vacation leaves, illness benefits and sick leaves; health insurance, life insurance in the amount of $100,000, disability, eye glass coverage in the amount of $150 per family member per year, and dental coverage in the amount of $1,000 per family per year. The Board will provide the Superintendent with a disability insurance policy, at a maximum monthly premium of $125.00 or $1500.00 annually.

## 11. Vacation Leave

The Superintendent shall be credited with 24 days vacation leave, previously accumulated, upon commencement of employment in this position with the District. The Superintendent shall be credited with an additional 12 days of vacation leave, upon completion of each six months of employment with the District. The Superintendent shall be entitled to roll over a maximum of 10 vacation days each year. The Superintendent shall be entitled to accumulate up to a maximum of 240 days unused vacation leave during the period of her employment with the District. Such accumulated vacation leave shall be carried over and may be used during any subsequent year of employment. In the event the Superintendent has unused accumulated vacation leave at the time her employment with the District terminates, she shall be paid at the rate of $1/240^{th}$ of her then current salary for each day of unused accumulated vacation leave, not to exceed 90 days or up to a $10,000 maximum. In

4

Received Time  Jul 22   2:00PM

the event termination is due to retirement, the Superintendent shall be reimbursed for up to 90 days vacation leave without a monetary maximum.

## 12. Sick Leave

The Superintendent shall be credited with 24 days of sick leave, previously accumulated, upon commencement of employment in this position with the District. The Superintendent shall be credited with an additional 9 days of sick leave upon completion of each six months of employment with the District. The Superintendent shall be entitled to accumulate unused sick leave during the period of her employment with the District. Such accumulated sick leave shall be carried over and may be used during any subsequent year of employment. In the event the Superintendent has unused accumulated sick leave at the time her employment with the District terminates, she shall be paid at the rate of one day's pay for every three days of unused accumulated sick leave, not to exceed a $10,000 maximum. The daily rate of pay shall be that earned in the prior year. In the event termination is due to retirement, the Superintendent is entitled to be reimbursed at the rate of one day's pay for every three days of unused accumulated sick leave without a monetary maximum.

## 13. Personal Leave

The Superintendent shall be credited with 4 personal leave days upon commencement of employment in this position with the District. No reason for the leave need be offered. One day prior notice must be given except in case of emergency. The unused personal leave days will be added as sick leave at the end of the year.

The Superintendent shall be entitled to five days per year absence in the event of each death in the immediate family; the immediate family shall be deemed to include the following: Spouse, child, son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, sister-in-law, sibling, grandparents, grandchildren, and any relative residing on a full-time basis with the Superintendent.

## 14. Expense Reimbursement

The Superintendent is authorized to incur reasonable expenses in the discharge of duties, including but not limited to expenses for travel and lodging; professional association dues and fees; attendance at professional conferences and meetings on national, state and local levels; and similar items related to her employment. The Board will pay or reimburse the Superintendent for all such expenses upon presentation no less frequently than quarterly of an itemized account of such expenditures. However, the Superintendent shall submit yearly prior to the District finalizing it's budget, a proposed memo of professional association dues and fees and attendance at professional conferences and meetings with an anticipated budgetary amount. The Board shall not unreasonably withhold its approval.

## 15. Transportation

The Superintendent shall be provided with mileage at the IRS rate for school business travel.

5

## 16. Health and Insurance Benefits

The Superintendent shall contribute toward the cost of health insurance by paying the Board an amount equal to 10% of the premium cost of her health insurance coverage each year. The benefits under any health plan furnished by the District must be continuously comparable to those given under the plan presently in effect. Any change in health plan or carrier will be subject to the Superintendent's input.

The Board will continue to pay the costs of health insurance premiums until such time as the Superintendent reaches Medicare age, at which time health insurance premiums will also be paid under that plan. If the Superintendent retires from her position while in the employ of the District, the District will continue to pay the costs of health insurance premiums until such time as the Superintendent reaches Medicare age, at which time health insurance premiums will also be paid under that plan.

## 17. Indemnification

The Board agrees to provide legal counsel and to indemnify the Superintendent against all uninsured financial loss arising out of any proceeding, claim, demand, suit or judgment by reason of alleged negligence or other lawful conduct resulting in bodily or other injury to any person or damage to the property of any person committed while the Superintendent is acting within the scope of her employment or at the direction of the Board, provided, however, that the Superintendent's actions giving rise to punitive damages shall not be subject to indemnification by the District.

## 18. Other Work

The Superintendent shall devote her full time, skill, labor and attention to the discharge of her duties during the term of this Agreement; provided, however, that she may undertake consultative work, speaking engagements, writings, lecturing or other professional duties, obligations and activities, with or without remuneration, so long as such activities do not interfere with the full and faithful discharge of the Superintendent's duties and responsibilities as specified herein. However, the Superintendent shall submit to the Board written notification of her intention to engage in work other than her full time work for the District when such activities would exceed five (5) hours per week. The Superintendent and the Board shall discuss the facts and issues involved if the Superintendent's "other work" is to exceed five (5) hours per week.

## 19. Disability

If the Superintendent is unable to render the services required of her hereunder by reason of sickness or other disability for a period of time extending beyond the Superintendent's sick leave entitlement (as the same may then exist or may be extended by the Board) then, in that event, the Board shall grant the Superintendent an extended leave for an additional six (6) months at full pay less any disability benefits she may receive or be eligible to receive from the disability policy provided by the Board of Education and social security disability benefits. Upon the expiration of six (6) months from the Superintendent's exhaustion of her sick leave entitlement, at the option of the Board and upon written notice to the

6

Superintendent, the Board may grant a further leave, with or without compensation (and, if compensated, at a rate determined by the Board) or the Board may terminate this Agreement. In the event of such termination, the compensation provided for herein shall be paid to the Superintendent for and including the month to which such extended leave has been granted.

## 20. Annual Medical Examination

The Superintendent agrees to have a comprehensive medical examination performed once during each twelve month period of employment by a duly licensed physician of her choice and to file a statement from the examining physician certifying as to her physical competency with the Clerk of the Board. Such statement will be treated as confidential information. The cost of such annual medical examination shall be paid by the Board up to $300.00 if not covered by health insurance.

## 21. Retirement

For the purposes of any retirement benefit under the terms of this Agreement, the Superintendent shall be deemed to have "retired" from her employment if she has completed at least three years of service as Superintendent of the District and there shall have been no finding of guilt on charges brought against the Superintendent, pursuant to paragraph "23" of this Agreement.

## 22. Termination

This Agreement may be terminated by written agreement between the Board and the Superintendent, or by the resignation of the Superintendent submitted in writing to the Board with at least 60 days notification. This Agreement may also be terminated, and the Superintendent may be removed during the term hereof upon the happening of either of the following events:

- (a) The Superintendent shall be unable, by reason of sickness or other disability, to discharge the duties and responsibilities specified in this Agreement for a period of six (6) consecutive months beyond exhaustion of the Superintendent's accumulated sick leave entitlement, or beyond the period of any extended leave granted by the Board as authorized in paragraph "17" hereof; or

- (b) The Board establishes that there is just cause for the dismissal of the Superintendent in accordance with the hearing procedures set forth in paragraph "23" hereof.

- (c) If the Superintendent does not adhere to the 60-day advance notice requirement, all accrued vacation time will be forfeited.

## 23. Hearing Procedures

- (a) Charges against the Superintendent may only be brought by the Board and all such charges shall be in writing. The Superintendent shall be entitled to a fair hearing on said charges, upon at least thirty (30) days notice, before an independent hearing officer. The hearing officer shall be selected by mutual agreement between the

7

Superintendent and the Board or, in the event no such agreement is reached within thirty (30) days after the Superintendent's receipt of the written charges, by appointment pursuant to rules and procedures of the American Arbitration Association ("AAA").

(b) The Superintendent may be suspended from the performance of her duties with pay during the pendency of such hearing and shall be entitled to due process protection at such hearing, including but not limited to, the right to elect a public or private hearing; to be represented by counsel; to present, cross-examine and subpoena witnesses; to subpoena documents, papers, letters or other tangible evidence; to have all testimony given under oath; to receive without cost an accurate written transcript of the proceedings; and to receive written findings of fact and conclusions of law from the hearing officer. The decision of the hearing officer shall be binding upon the parties, subject to their respective rights to appeal in accordance with the law.

(c) Criticisms or complaints which have not been previously forwarded to the Superintendent in accordance with the provisions of paragraph "5" of this Agreement shall not be admissible at such a hearing against the Superintendent.

(d) If the charges against the Superintendent are not sustained at such hearing and the hearing officer makes the determination that such charges were frivolous in nature, or after any appeal therefrom, the Board shall reimburse the Superintendent for the reasonable and necessary attorneys' fees and disbursements incurred by the Superintendent in the defense of the hearing or appeal therefrom.

## 24. Written Agreement

This Agreement shall continue in full force and effect for the term expressed herein unless otherwise terminated, modified, or extended in accordance with the provisions of paragraph "3" hereof or by an agreement in writing between the parties.

## 25. Survival

(a) If the District is dissolved, annexed to, merged or consolidated with one or more school districts, the Board agrees to make every reasonable effort to ensure that the Superintendent is appointed to the position of Superintendent of the merged district. If this is not possible, then the Board shall make every reasonable effort to ensure that the Superintendent is appointed to a position in the merged district which is consistent with the Superintendent's education, background, experience, certification and former status and is acceptable to the Superintendent. In either case, the Superintendent shall be entitled to receive salary, benefits and rights provided for under this Agreement for the balance of the unexpired term hereof.

(b) If the Superintendent is not appointed to the position of Superintendent or a comparable position in the merged district, then the Board shall continue to pay the Superintendent all salary and benefits provided for under this Agreement until

8

the end of the term of this Agreement. If the merged District fails to pay said salary and benefits, such cost shall be a debt of the District, and the District shall continue in existence as provided by law for the purpose of paying such debt. Alternative severance arrangements may be entered into upon the written agreement of the Superintendent and the Board.

## 26. Severeability

The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year first above set forth.

(Seal)

BOARD OF EDUCATION OF THE
HIGHLAND FALLS-FORT MONTGOMERY
CENTRAL SCHOOL DISTRICT

BY: _____

Superintendent

9

## ACKNOWLEDGMENTS

STATE OF NEW YORK )
: ss.:
COUNTY OF ORANGE )

On this $\frac{l}{o}$ day of April , 2000, before me came Ned Kopald to me known who, being by me duly sworn, did depose and say that he resides in Highland Falls, NY, that he is the President of the Board of Education of the Highland Falls-Fort Montgomery Central School District described in and which executed the foregoing Agreement; that he knows the seal of said school district; that the seal affixed to said Agreement is such school district seal; that it was so affixed by order of the Board of Education of said school district; and that he signed his name thereto by like order.

_____
Notary Public

RUTHANN BAKER
Notary Public, State of New York
# 01BA4520804
Qualified in Orange County
My Commission Expires June 30, 19— 2000

STATE OF NEW YORK )
: ss.:
COUNTY OF ORANGE )

On this 6 day of April , 2000, before me came Geniene Guglielmo, known to me to be the person described in and who executed the foregoing Agreement, and duly acknowledged to me that she executed the same.

_____
Notary Public

RUTHANN BAKER
Notary Public, State of New York
# 01F 14520804
Qualified in Orange County
My Commission Expires June 30, 19— 2000

10

Exhibit B

KUNTZ, SPAGNUOLO, SCAPOLI & SCHIRO, P.C.

ATTORNEYS AT LAW

RAYMOND C. KUNTZ
MARIO L. SPAGNUOLO**
THOMAS SCAPOLI*
JEFFREY J. SCHIRO

RAYMOND C. KUNTZ, III
LEAH L. MURPHY
MARIA D. GILL*
VANESSA M. GRONBACH
JENSEN VARGHESE

* ALSO ADMITTED IN CONNECTICUT
** ALSO ADMITTED IN NEW JERSEY

P. O. BOX 396
ROUTE 22, HUNTING RIDGE MALL
BEDFORD VILLAGE, NEW YORK 10506
(914) 234-6363
FAX (914) 234-6249
Law@schoolattorney.com

BOX 3330, 21 DAVIS AVENUE
POUGHKEEPSIE, NEW YORK 12603
(845) 454-5030

LEGAL ASSISTANTS:
SUSAN AGNIFILO
LISA HALPIN
ROSEMARIE KUNTZ

March 22, 2005

Mr. Joel Douglas
P.O. Box 62
Valhalla, New York 10595

**SENT BY EMAIL**

Re:   Highland Falls Fort-Montgomery Central School District v.
Dr. Geniene M. Guglielmo

Dear Mr. Douglas:

There is no factual or legal basis upon which the hearing can proceed. Mr. Cohen's letter of February 18, 2005 attempts to explain away the incongruity of holding a hearing to terminate an employee who is no longer an employee. He claims the District has a right to the hearing because it faces the possibility that a judicial authority might force it sometime in the future to reemploy her. Basic contract law undercuts the District's theory. If a party repudiates essential provisions of a contract (in this case by not paying salary and benefits) it cannot enforce other provisions of the contract (the hearing).

The cases cited by the District do not support its position. When a tenured teacher is still employed by a district, a district has a right to proceed until an irrevocable resignation is received. Similarly, when a teacher is excessed, the teacher has a right to return if a position opens. The cases posit the right of the teacher to return. Here, the District asserts the exact opposite of the cases. It asserts that Dr. Guglielmo has no right to return to her position, regardless of whether the charges against her are proven. However, it wishes to pursue charges against her in case it acted unlawfully in terminating her. The cases cited by the District establish just the opposite conclusion: charges may only be maintained when the District acknowledges the right of the employee to a position, absent a hearing. Otherwise, there is no point in the hearing. In non-legal terms it's called "pay to play."

The District elected its remedy when it terminated Dr. Guglielmo's contract and stopped her salary and benefits. It cannot hold a hearing to guard against its unlawful action in terminating her. If it wishes to question its own decision to terminate her contract, it can pursue its legal options before a forum which can answer the question, "When is a terminated employee really and truly terminated?" It can't ask that question of you and can't ask you for a stamp of approval for what it's done unilaterally.

The District's true motives are seen in the addition of five additional trumped up charges. These charges come six months after Dr. Guglielmo last served as Superintendent. More significantly, these charges "surfaced" almost immediately after the District was informed (at the same time Dr. Guglielmo's settlement offer was made – so that there would be no surprise) that she was filing with the EEOC, alleging discriminatory conduct on the part of the District and its Board members. Following that disclosure, the Board "found" these charges and added them to the others. They are clearly retaliatory and without merit.

At the January 4th meeting, you proposed to Mr. Cohen and me that Dr. Guglielmo make a settlement offer to the School District. She did so. It was detailed, consisting of several elements. No response has ever been made by the District or by Mr. Cohen to her offer in any way. No phone calls. No letters. Nada. Nothing. In his letter of February 18, 2005 to you Mr. Cohen states, "Since the parties have been unable to settle this matter, we thought it would be helpful to you to submit a letter brief citing... " The District's only reaction to the offer was to bring 5 additional supplementary disciplinary charges against Dr. Guglielmo. That is not "unable to settle" in my book. Mr. Cohen's letter is an attempt to create an alternate universe in which the Board of Education gave due deliberation to Dr. Guglielmo's offer and respectfully communicated its rejection. Like most alternate universes, it's fictional.

There is no legal basis on which the hearing can go forward. It is a creature of the contract. Once the District repudiated the contract, it forfeited its right to the hearing. Its claim that it needs the hearing to protect itself against the possibility that some other jurisdiction might find its breach wrongful and reinstate Dr. Guglielmo is something it will have to address at the time that occurs. It can't ask you to cover its bet by asking you to proceed with a contractual hearing under a contract it has repudiated.

Yours truly,

KUNTZ, SPAGNUOLO, SCAPOLI & SCHIRO

*Ray Kuntz*

Raymond G. Kuntz

RGK/sa

cc:     Robert H. Cohen, Esq., via email

**From:** "susan" <sue@schoolattorney.com>
**To:** <profjmd@aol.com>; <rhc@lambbarnosky.com>
**Sent:** Wednesday, May 25, 2005 5:00 PM
**Attach:** westlaw scan.pdf
**Subject:** Highland Falls v. Geniene Guglielmo

## KUNTZ, SPAGNUOLO, SCAPOLI & SCHIRO, P. C.

ATTORNEYS AT LAW

RAYMOND G. KUNTZ
MARIO L. SPAGNUOLO**
THOMAS SCAPOLI*
JEFFREY J. SCHIRO
————
RAYMOND G. KUNTZ, III
LEAH L. MURPHY
MARIA D. GILL*
VANESSA M. GRONBACH
JENSEN VARGHESE
————
* ALSO ADMITTED IN CONNECTICUT
** ALSO ADMITTED IN NEW JERSEY

P. O. BOX 396
ROUTE 22, HUNTING RIDGE MALL
BEDFORD VILLAGE, NEW YORK 10506
(914) 234-6363
FAX (914) 234-6249
Law@schoolattorney.com
————
BOX 3330, 21 DAVIS AVENUE
POUGHKEEPSIE, NEW YORK 12603
(845) 454-5030

LEGAL ASSISTANTS:
SUSAN AGNIFILO
LISA HALPIN
ROSEMARIE KUNTZ

May 25, 2005

Mr. Joel Douglas
P.O. Box 62
Valhalla, New York 10595

Re: Highland Falls Fort-Montgomery v. Dr. Geniene M. Guglielmo

Dear Dr. Douglas:

Please consider this letter a supplement to our previous letter on the subject of whether or not there is any authority for a disciplinary hearing for Dr. Guglielmo to continue in view of the fact that the School District has breached the contract of employment. Unlike the cases which have been cited by the School District in its previous letter and arguments, this case is a creature of contract and must be determined by contract, and not tenure law. Under contract law, the School District's breach of the agreement renders it impotent to compel a hearing.

To begin a proper analysis, we must determine where the authority for a hearing originates. Dr. Guglielmo is not a tenured employee and has no right to a hearing under the Education Law. Any case cited under 3020-a of the Education Law is not relevant and must be discarded. If Dr. Guglielmo was a tenured employee she would be receiving her salary and benefits, she would still be an employee and the current issue would not be before you. Similarly, she is not a civil servant with rights to a hearing under the Civil Service Law. Any cases under Civil Service Law Section 75 therefore have no application to this issue. The authority for a hearing comes from a contract signed by the School District and Dr. Guglielmo on April 6, 2001. Section 23 of that contract obligates the parties to submit any disciplinary charges to a hearing for the purposes of prematurely terminating Dr. Guglielmo's contract. There is no dispute between the parties as to the abovementioned facts. Your jurisdiction is based solely on contract.

The dispute is whether or not the School District can enforce a hearing. The contract provides for extensions based on certain events and actions (or inactions) by the parties. The parties agree that the contract was extended at least through December 31, 2004. Dr. Guglielmo believes that the School District is obligated to her until December 31, 2006. The School District asserts that the contract terminated on December 31, 2004. The School District stopped paying Dr. Guglielmo for her services on December 31, 2004. The School District's only argument is that Dr. Guglielmo should she prevail on an action charging the School District with breach of her contract, would be compelled to undergo a hearing. That view is simply incorrect.

The School District has clearly breached the contract by failing to pay her for the past five months. *It is well settled in contract law that once one party breaches a contract, the obligations imposed on the other party end.* I have attached a section of New York Jurisprudence, which explains the legal basis for ending a contract after a breach. That section reads, in part, "A party may not insist upon the performance of a contract where he or she has brought about its breach." Further, it states that "A total breach by the obligor on a contract excuses the obligee from the duty of further performance." This is a matter of fundamental law and fairness. The law recognizes that it would be unfair to make the victim of a contractual breach perform her duties when the other party has breached. This is long standing case law in New York.

There can be no doubt that the School District has breached Dr. Guglielmo's contract. She has not been paid for the past five months. She has not received any benefits under the contract. In short, she has received nothing due her under the contract since December 31, 2004. This constitutes a complete and total breach. As such, Dr. Guglielmo no longer has to perform any of the obligations under the contract. Yet, the School District now seeks to force Dr. Guglielmo to submit to the disciplinary process contained within the contract. She is not obligated to do so because the contract has been breached and her responsibilities under the contract are terminated under New York State Law.

The School District wants to use the contract as a shield against Dr. Guglielmo's claim tat she be paid her salary and benefits. It points to its termination of the contract as its rationale for its refusal. It seeks to use the contract as a sword to compel the hearing on the theory that the contract which it claims is no longer in effect *may* be reinstated. There is no legal authority for this assertion. If it had continued paying Dr. Guglielmo under the contract, it would have a right to conduct this disciplinary hearing. It chose not to. If it was unsure of when the contract ended, it could have sought judicial review through a declaratory action. Again, it chose not to. What the School District did decideto do was to cut off Dr. Guglielmo's salary and her benefits, despite knowing her serious health concerns and those of her husband. When the School District took those actions, it breached the contract and terminated all rights under the contract, including its right to the hearing in question.

In summary, if the School District's assertion that the contract is over is correct, there is no jurisdiction for this hearing. The contract has ended. If Dr. Guglielmo is correct that the contract was extended until December 31, 2006, then there is no question that the School District has breached the contract and there is no jurisdiction for this hearing. The School District, by its own actions, has terminated any jurisdiction you might have had prior to its declaration that the contract had ended. There is simply no further issue for you to consider.

Yours truly,

KUNTZ, SPAGNUOLO, SCAPOLI AND SCHIRO, P.C.

*Mario L. Spagnuolo*

Mario L. Spagnuolo

cc: Robert Cohen Esq.

Westlaw.

### New York Jurisprudence, Second Edition
### Database updated May 2005

**Contracts**

Thomas Barnett, J.D, David Epstein, J.D., Herbert G. Feuerhake, J.D., Christine
Gordon, J.D., Paulette Peters, J.D., N. Lee Spaulding, J.D., Judy Zelin, J.D.
and the staff of the Immediate Legal Research Corporation
### VIII. Performance or Breach
### D. Excuses for Nonperformance
### 4. Act or Omission of Adverse Party
### a. In General

Correlation Table; References

§ 408. Generally

**West's Key Number Digest**

West's Key Number Digest, Contracts ☜312

A party may not insist upon the performance of a contract where he or she has brought about its breach.[FN68] Nor can a plaintiff prevail in an action for nonperformance of a contract where the plaintiff alone is responsible for such nonperformance.[FN69]

A total breach by the obligor on a contract excuses the obligee from the duty of further performance.[FN70] A refusal to accept tender of performance is such a **breach** of **contract** excusing a party from further performance on its part.[FN71] Further, a party's performance under a contract will be excused where the adverse party has violated the covenant of fair dealing and good faith implied in every contract.[FN72] In order for a breach of an implied covenant of a contract to work a forfeiture of benefits under another covenant and thus excuse performance thereof by the other party, the covenants must be dependent, the breach must be substantial, and it must have been committed in bad faith.[FN73]