UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GENIENE M. GUGLIELMO,

                         Plaintiff,

                                                        05 Civ. 7887 (CLB)

              - against -                               *Memorandum and Order*

NED KOPALD, Individually and in his official
capacity as a member of the Board of Education,
et al.,

                         Defendants,
-------------------------------------------------------------x
Brieant, J.

        This ill-starred ADA employment discrimination case, which has been pending since

September 9, 2005, and has generated twenty-nine separate docket entries including seven

separate hearings before the Court, is still not ready for trial.  Before this Court for decision is a

Motion for Summary Judgment by Defendants (Doc. 11) filed October 27, 2006, and for

Summary Judgment by Plaintiff (Doc. 16) filed November 10, 2006.  Pretrial discovery is not yet

concluded, and there remains unresolved a significant privilege list of documents claimed to be

attorney-client privileged and therefore not to be produced by Defendants.


        The following facts appear from the incomplete record before this Court.  Plaintiff, age

62 when the action was filed, was at relevant times employed as Superintendent of Schools by

the defendant Highland Falls/Fort Montgomery Central School District.  The individual

Defendants hold various positions with the School District as set forth in the Complaint.

-1-

The Plaintiff asserts employment discrimination, for which she received two Right to Sue Letters from the EEOC respectively on June 7, 2005 and June 11, 2005. She also sues on a state law claim, within our supplemental jurisdiction, for breach of contract pursuant to Section 3813 of the Education Law of New York, and had served Notice of Claim on March 23, 2005.

Plaintiff became Superintendent of Schools under a written contract attached to the Complaint in January 2000. Plaintiff was diagnosed with breast cancer in 2001 and was treated during the 2001-2002 school year, following surgery, with chemotherapy and radiation. She suffered visible signs of her condition and has a record of physical impairment within the Americans with Disabilities Act, and also a perception of impairment. She attempted to work during the course of her treatment, but was regarded by Defendants as too impaired or mentally incapacitated to perform her work. She was subjected to a hostile work environment and regarded and treated as if unable to perform the functions of her position. She claims, however, and defendants dispute that she was a qualified individual with a disability.

Ms. Guglielmo was first appointed to the position at a meeting on December 9, 1999 by the Board to the position for a three year period commencing on January 1, 2000, unless further extended or terminated. The so-called "evergreen" contract, incorporated by reference in the Complaint, provides two methods by which the Contract could be extended: (1) by an affirmative action extending the term of employment for an additional one year period after performing a required annual evaluation review, or (2) as an automatic occurrence upon the failure of the Defendant Board to perform its annual evaluation of Plaintiff's performance, or its refusal to

-2-

rule, consider and vote upon such extension no later than March 1st of each succeeding year of the contract.

On September 27, 2000 the Board extended the Plaintiff's contract one additional year to December 31, 2003.  Complaint at ¶ 30.  For the 2001 school year, according to the agreed practice of the parties, as alleged by Plaintiff, evaluation was to be conducted July 30, 2001.  The Board appointed an evaluation committee to implement the agreed upon procedure for performing Plaintiff's evaluation.  The Plaintiff submitted her evaluation on July 7, 2001, prior to undergoing surgery for the removal of a malignant breast tumor on July 12, 2001.  She alleges she disclosed her diagnoses and treatment to the Board of Education at some point in July 2001 and notified the Board that post-surgical treatment with chemotherapy would commence in August 2001.  By September she had lost her hair, and her physical condition was apparent to all.

On January 10, 2002, the Defendant Board met and voted to increase Plaintiff's salary by 4.5% and to extend her contract to December 31, 2004.  Delay in so doing, while it may have some evidentiary bearing on knowledge and intent of the actors, does not affect the validity of that contract extension.

Plaintiff placed her self-evaluation form on the agenda for the August 21, 2002 meeting and requested action in September 2002 and again in October 2002.  The Board failed to take action, and Plaintiff alleges that by operation of the contract in October 2002, the contract was "automatically extended another year to December 31, 2005."

-3-

On July 31, 2003, Plaintiff presented her self-evaluation and placed it on the August 14, 2003 agenda. The Board failed to take action. She placed her evaluation on the agenda again for September 16, 2003 and again for September 30, 2003, and November 6, 2003. No action was taken by the Board and Plaintiff alleges again that by operation of the contract she was automatically renewed and extended another year to December 31, 2006.

After having submitted no evaluations during the years noted, on April 19, 2004 the Board delivered Plaintiff the Superintendent's Evaluation for 2003-2004 and invited her to a special meeting to be held on April 29, 2004. This evaluation, which was apparently prepared for the Board members by an attorney retained by them for the purpose, contrary to the prior practice under which the members themselves executed the evaluation, was very negative and raised a number of issues critical of Plaintiff's job performance.

She was suspended from her position in early 2004 and informed that she was under investigation. On April 29, 2004, the Board voted not to extend her contract further.

It would appear arguably from the foregoing recital that the contract did not expire until December 31, 2006. The Board claims that it was due to expire on December 31, 2004. This issue cannot be resolved on the present record before this Court, and the Court assumes that for purposes of the motions Plaintiff has presented at least a *prima facie* case that her contract ended sometime after December 31, 2006. Under the contract she may not be removed for cause except during the term of the contract, after a hearing before an independent hearing officer.

-4-

On July 16, 2004 the Board filed fifty-five separate disciplinary charges alleging misconduct against the Plaintiff, and seeking her dismissal as Superintendent.  An issue arose as to whether in light of the Defendant Board's contention that the contract had been terminated December 31, 2004 the Hearing Officer could go forward with the Hearing.  This remains unresolved.  However, the District has ceased paying Plaintiff's salary and benefits effective January 1, 2005.

Five additional supplemental charges were filed on January 13, 2005, but the Hearing Officer dismissed them for want of jurisdiction on the theory that the Contract had already expired.

*Plaintiff's Motion*

As a matter of discretion Plaintiff's Motion for Summary Judgment is denied without prejudice.  It is obvious that all of Plaintiff's claims cannot be resolved in her favor by grant of summary judgment, and a plenary trial will be required as to part of the case in all events.  If Plaintiff were granted summary judgment on any of her claims, the matter of damages would still have to be heard by a trial jury.  To do this, particularly where punitive damages are sought, it is essential for all of the facts to be set before the jury bearing upon liability.  If partial summary judgment, not actually provided for in Rule 56, is granted, there is always the fear that evidence may turn up at trial which will question the validity of such an order, which of course does not become appealable until a final judgment is entered.  Even the issue of when the Contract of Employment ended is not free from doubt on the present record.

*Defendants' Motion for Summary Judgment*

A vast number of issues of genuine issues of material fact prevent summary judgment in favor of Defendants. The record presently before this Court requires a plenary trial on most if not all of the Plaintiff's claims. It is apparently uncontested that the Plaintiff had a major physical disability which was readily apparent and known to all persons acting for the employer. The objections to her job performance seemed to begin almost immediately after disclosure of her disabilities. A co-worker made a stray remark that Plaintiff's "the chemo was going to her brain." The Board for the first time expressed dissatisfaction, which may well be genuine, as to her job performance, and for the first time failed to give her the required evaluation of her work in a timely manner and in accordance with the terms of the Contract.

In April 2004, following more than two years since her last annual evaluation was made, the evaluations were for the first time highly negative, and were prepared by an attorney rather than as in the past by Board members. The timing of these events in juxtaposition to the dates in her disclosure of the disability are alone enough to survive a motion. On the incomplete record before this Court the trial jury may very well find that the Defendants perceived her as disabled and made no effort to provide or consider an accommodation.

It is also alleged that the Board engaged in micro management of the work, which had not previously been a practice in the district. An individual Defendant was said to have remarked concerning an infection on Dr. Guglielmo's arm as a result of chemotherapy: "eww, that's disgusting." (Defendant's Ex. D, Transcript p. 153) The Board voted on the disciplinary charges,

-6-

fifty-five in number.  At least one of the Board members testified on deposition that she never saw the charges, and that there was no discussion by the Board members as to what the charges were.  Jurors could infer that these charges were drafted by an attorney without input from the individual Defendants as pretext in order to implement a prior decision to remove Plaintiff from office.

It does seem that at least some of the disciplinary charges not yet adjudicated after this long-elapse of time are petty, unfounded or both.  Charges 3 to 16 concern hiring of unqualified teachers.  These teachers were not certified.  The Board members knew this at the time they were hired, and the final hiring decision is made by the Board, not the Plaintiff.  They applied for waivers of their lack of qualifications from the State Department of Education and those waivers were granted retroactively to the date of hire.  A reasonable juror can consider that the mere making of charges like that suggests an evil and improper motive.

Courts have been reminded again and again that caution must be exercised in granting summary judgment to an employer when knowledge and intent is an issue.  All of the relevant documentation involving this case is not yet a matter of record and the evaluation of Plaintiff's circumstantial evidence requires the consideration of a trial jury.

Apart from the Americans With Disabilities Act claim, which is to this Court an essential part of the case, Plaintiff claims that she was discriminated against on the ground of gender because she was replaced by a male Superintendent paid 30% more than she had received for the

-7-

same work.  This matter is also proper for consideration by the trial jury, both as bearing on motive and as a separate statutory claim.

The Plaintiff also claims retaliation for her claim of protected activity in filing with the EEOC and for speaking out in a matter of public concern.  *Garcetti* issues concerning the First Amendment claim can best be resolved on a complete trial record.  The public opinion expressed by Plaintiff turned out to be correct, although at odds with the public opinion expressed by Board member Kopald as to whether certain handicapped students were entitled to an education at the District, and clearly a matter of public concern.

The Defendants' motion for summary judgment is in all respects denied.

*Pretrial Preparation*

This case was originally required by the Court's Scheduling Order to be ready for trial on May 18, 2005.  As noted earlier, it is not yet ready.  By order signed simultaneously herewith, this case is being assigned to the Hon. Lisa Margaret Smith, United States Magistrate Judge for all pretrial purposes.  Without limiting the scope of the reference in any way, the Court respectfully requests the Magistrate Judge to convene a meeting of counsel and take action in connection with the following matters, and others as she finds desirable:

*Privilege Log*

The documents on the privilege log should be inspected *in camera* and an effort should

be made to resolve, as to each document, whether attorney-client privilege is available. Furthermore it should be made clear to the Defendants, some of whom are being sued for punitive damages, that they will be unable to withhold production of arguably privileged documents during discovery and thereafter appear at trial, waive the privilege and claim to the jury that they relied in good faith on the advice of counsel in connection with what appears to be somewhat questionable conduct in their dealings with Plaintiff. The Magistrate Judge should set a date after which this tactic will become impossible and the privileged information and documents, if not produced in pretrial discovery, may not thereafter be waived and relied on at trial.

*Complete Discovery*

Arguably, discovery is not complete. There does not seem to be any excuse for this. Defendants failed to produce adequate records concerning the investigation and issuance of the disciplinary charges. This was refused at first on the ground that there was "no *formal* investigation." It need not be formal to be discoverable. The name of the person who presented the charges to the Board should be made clear, and all investigatory documents should be made available. The Magistrate Judge should set clear deadlines for production of everything which ought to be produced and has not been produced as yet, and should consider the imposition of sanctions, to and including striking the Defendants' Answer if compliance is not forthcoming promptly.

*Activities of Defense Counsel*

-9-

The Magistrate Judge should ascertain and Report to this Court whether and to what extent the attorneys for the law firm presently representing all of the defendants engaged in investigating and preparing the disciplinary charges or advised the Board as to its activities, and also what investigation if any was undertaken, whether characterized as formal or not.  Once this information is known, consideration must be given as to whether Attorney Zuckerman, Attorney Cohen, or both "ought" to testify as witnesses at trial either in support an individual Defendant's likely claim, not yet asserted but clearly foreseeable that he or she acted in good faith and on the advice of counsel; or to support Plaintiff's claim that the charges or any of them and disciplinary proceedings were a sham, known to be so, or a pretext for unlawful discrimination or the violation of Plaintiff's rights.  If either or both of these attorneys ought to testify the Court will disqualify Defendant's law firm.  Since disqualification of the Defendants' law firm will require new attorneys to become familiar with all prior proceedings in order to provide a defense, this issue should be heard, and reported to this Court as soon as conveniently possible.

The Magistrate Judge should hear and report to this Court whether or not excessive stonewalling of pretrial discovery on the part of defense counsel, which appears to have occurred to date, requires some sort of sanction, including but not limited to payment of Plaintiff's counsel fees for time wasted in pursuit of the documents.

Lastly, the Magistrate Judge shall advise the Court when all discovery is complete, so the matter may be scheduled for a jury trial.

Motions (Docs. 11 and 16) are denied.

-10-

SO ORDERED.

Dated: White Plains, New York
      June 25, 2007

Charles L. Brieant, U.S.D.J.